**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: February 28 2013

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 11-33793 |
| | ) | |
| William P. Camp and | ) | Chapter 7 |
| Kimberly B. Camp, | ) | |
| | ) | Adv. Pro. No. 11-3264 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Gayle Phelps, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| William P. Camp, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER
REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on the parties' cross-motions for summary judgment [Doc. ## 14 & 16], and Plaintiff's opposition [Doc. # 17]. In her complaint, Plaintiff seeks a determination regarding the dischargeability of an obligation of Defendant, Debtor in the underlying Chapter 7 case, to

pay a debt as set forth in the parties' decree of dissolution of marriage.[1]

The district court has jurisdiction over the underlying Chapter 7 case filed by Defendant pursuant to 28 U.S.C. § 1334(a) as a case under Title 11, and over all civil proceedings arising under Title 11, or arising in or related to Defendant's case under Title 11 pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a civil proceeding arising under Title 11, to the extent it seeks a determination of the dischargeability of a particular debt under 11 U.S.C. § 523(a)(15), as well as a civil proceeding arising in Defendant's Chapter 7 case. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that this court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(I). For the reasons that follow, the court will grant in part and deny in part Plaintiff's motion and will deny Defendant's motion.

## FACTUAL BACKGROUND

The following facts set forth in the parties' stipulation of facts and Plaintiff's affidavit are undisputed. The parties were married on June 7, 1986. On or about December 17, 1992, the parties entered into a Separation Agreement and, on March 1, 1993, the Court of Common Pleas of Holmes County, Ohio, entered judgment granting the parties a dissolution of their marriage and approving and incorporating the Separation Agreement ("Dissolution Decree"). [Doc. # 17-1, Pl. Aff., ¶¶1-2; Doc. # 18, Ex. A]. Article IV of the Separation Agreement provides as follows:

IV. <u>MARITAL INDEBTEDNESS</u>

Except for those debts and obligations created under this Agreement, each party agrees to pay and hold the other party harmless from all debts, liabilities and obligations incurred by him or her from the effective date of this Agreement.

With respect to the financial obligations incurred by the parties during the marriage, the following shall apply:
(a) The wife shall pay the following obligations: First, second and third mortgages and one-half of the $1,900.00 Long and Wilson bill.
(b) The husband shall pay the following obligations: Killbuck Bank loan of approximately $16,000.00, Commercial and Savings Bank loan of approximately

---

[1] Plaintiff's complaint also includes a second cause of action seeking an order that Defendant pay Plaintiff pursuant to the decree of dissolution and pay attorney's fees that she might incur in the enforcement of such order. The prayer for relief further demands a separate money judgment from this court. Plaintiff's motion for summary judgment addresses her first cause of action seeking a declaratory judgment that the underlying marital debt is excepted from Defendant's Chapter 7 discharge and also asserts grounds for liability for attorney's fees pursuant to the second cause of action in the complaint. The parties' motions, and Plaintiff's motion in particular, do not address the calculation of attorney's fees or any separate money judgment amount. The court therefore treats the motions as seeking partial summary judgment.

2

  $34,000.00, the Hixon and Young bill of approximately $9,000.00 and one-half of the Long and Wilson bill.

[Doc. # 18, Ex. A at p. 3].

  Defendant defaulted on the original, 1991 note for $35,074.76 owed to Commercial and Savings Bank ("the Bank"), and the Bank filed a lawsuit demanding judgment in the amount of $33,848.40 plus interest against both parties. [Doc. # 10, ¶ D & F; Doc. # 18, pp.12-13/19]. As a result of the lawsuit, the parties executed a note in the amount of $33,949.37 on August 16, 1993, that constituted a "replacement loan" from the Bank. [Doc. # 10, ¶ G; Doc. # 18, pp. 18-19/19].

  On July 11, 2011, Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code. He includes a claim of the Bank in the amount of $16,141.31 on his bankruptcy Schedule F, Creditors Holding Unsecured Nonpriority Claims. [Case No. 11-33793, Doc. # 17, p. 31/56].[2] The Bank filed its original proof of claim on November 8, 2011, in the amount of $16,666.12, [Doc. # 10, ¶ J], and began aggressive collection efforts against Plaintiff, [Doc. # 17-1, Pl. Aff. ¶ 16]. On February 1, 2012, Plaintiff settled the collection matter with a payment to the Bank in the amount of $12,000.00. [*Id.* at ¶ 17]. Thereafter, the Bank amended its proof of claim to show a reduced balance owed of $4,666.12. [Doc. # 10, ¶ K].

## LAW AND ANALYSIS

**I. Summary Judgment Standard**

  Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all reasonable inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there

---

[2] The court takes judicial notice of the contents of its case docket and the Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

3

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*. Although a party fails to respond to a motion for summary judgment, the court must nevertheless satisfy itself that the moving party has met the demands of Rule 56 before granting the motion. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

## II. 11 U.S.C. § 523(a)(15)

Section 523(a)(15) as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides in relevant part as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> . . . .
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

Generally, this section governs the dischargeability of debts incurred in connection with property settlements and agreements regarding marital debt set forth in divorce decrees and separation agreements. BAPCPA eliminated the affirmative defenses previously available under former subsections (A) and (B) of § 523(a)(15) and made debts encompassed under § 523(a)(15) unqualifiedly nondischargeable in Chapter 7 cases. *Blackburn v. Blackburn (In re Blackburn)*, 412 B.R. 710, 712 (Bankr. W.D. Pa. 2009). *But cf.* 11 U.S.C. § 1328(a). Thus, the court now has the following very narrow inquiry in determining whether a debt is excepted from discharge under this section: the debt must (1) be to a spouse, former spouse or child of the debtor; (2) not be of the type described in paragraph 5 of § 523, which excepts domestic support

4

obligations; and (3) have been incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court.

There is no dispute that Plaintiff is Defendant's former spouse and that the debt at issue is not a domestic support obligation. Defendant argues, however, that he does not owe Plaintiff a debt pursuant to the divorce decree as is required for exception from discharge under § 523(a)(15) because (1) the debt owed to the Bank is a debt that was entered into after the termination of their marriage and, thus, was not incurred in the course of or in connection with the Separation Agreement, and (2) the Separation Agreement itself "is flawed and fails to create an effective 'hold harmless' provision" that applies to either party with respect to any of the debts listed under Article IV. Plaintiff, on the other hand, argues that while the original debt owed to the Bank has been "replaced" or refinanced by the note executed on August 16, 1993, Defendant's obligation under the Separation Agreement remains the same. Plaintiff also argues that the lack of a hold harmless provision with respect to the debt at issue does not negate Defendant's obligation under the Separation Agreement. For the following reasons, the court finds Plaintiff's arguments well taken.

Under the Separation Agreement, incorporated into the domestic relations court's final Dissolution Decree, Defendant assumed the obligation to pay the marital debt owed to the Bank. Citing *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195 (B.A.P. 6th Cir. 1998), Plaintiff argues that this obligation creates a new liability running from Defendant to Plaintiff that was incurred in connection with the Separation Agreement. The court agrees, finding the approach and reasoning set forth in *Gibson* instructive and persuasive.[3]

In *Gibson*, under the parties' separation agreement that was incorporated into the dissolution decree, the defendant/debtor had agreed to pay a debt owed by the parties to his stepfather and the plaintiff had agreed to pay several other debts. *Id.* at 197-98. Although the agreement provided that the plaintiff would hold the defendant harmless with respect to the debts that plaintiff agreed to pay, there was no hold harmless provision relating to the defendant's agreement to pay his stepfather. *Id.* at 198. Several months later, the defendant filed a Chapter 7 bankruptcy petition, and, thereafter, the defendant's stepfather filed a complaint in state court against the plaintiff for nonpayment of the debt. *Id.* The plaintiff then filed a non-dischargeability complaint under § 523(a)(5) and (a)(15). *Id.*

Addressing the § 523(a)(15) claim, *Gibson* held that "the determination of whether a debtor incurs

---

[3] Although *Gibson* addressed the dischargeability of a divorce debt pursuant to § 523(a)(15) pre-BAPCPA, the court specifically considered whether the debt at issue was "incurred by the debtor in the course of a divorce or ... divorce decree" under old § 523(a) (15). *Gibson*, 219 B.R. at 201. Such language is also found in the current post-BAPCPA version of § 523(a)(15).

5

a debt in connection with a Separation Agreement or Dissolution Decree is not limited to the use of hold harmless or other specific indemnification language." *Gibson,* 219 B.R. at 203. The court noted the absence of the phrase "hold harmless" from the qualifying language of § 523(a)(15) and the presence of the qualifying term "incurred." *Id.* at 202. The court explained that an analysis of applicable nonbankruptcy law is necessary in determining whether a debt has been incurred. *Id.* at 203. It noted that, under Ohio law, the applicable law in that case as well as in this proceeding, "[u]pon the merger of a separation agreement into a domestic relations court's final decree, all causes of action under the separation agreement are extinguished and replaced by postjudgment remedies to enforce the decree." *Id.* at 204. "[T]he obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such." *Id.* The court explained that, under the dissolution decree, the defendant incurred an additional obligation in favor of the plaintiff to pay the debt owed to his stepfather, and the plaintiff obtained a "new right to payment and related enforcement rights, all of which were incurred by the [defendant] in connection with the parties' Separation Agreement as incorporated into the domestic relations court's Dissolution Decree." *Id.* at 205. Thus the court concluded that the debt in question satisfied § 523(a)(15)'s qualifying language, "notwithstanding that . . . the Separation Agreement lacks hold harmless or other indemnification language." *Id.*

In this case, as in *Gibson,* Defendant incurred an obligation under the Separation Agreement that is incorporated into the state court's Dissolution Decree to pay the debt owed to the Bank. Under the reasoning in *Gibson*, he also incurred an additional obligation in favor of Plaintiff to pay that debt, and Plaintiff obtained the right to payment and related enforcement rights, notwithstanding the absence of an applicable hold harmless provision. Because Defendant's obligation to Plaintiff was incurred in connection with the Settlement Agreement as incorporated into the Dissolution Decree, any debt owed as a result of that obligation is a nondischargeable debt under § 523(a)(15).

The provision in the Settlement Agreement that excepts "those debts and obligations created under this Agreement" from the "hold harmless" provision relating to debts incurred by the parties "from the effective date of the Agreement" does not require the court to conclude otherwise. The debt "created under" the Agreement as incorporated into the Dissolution Decree is, as explained in *Gibson*, the debt owed to Plaintiff as a result of the additional obligation incurred by Defendant in favor of Plaintiff with respect to paying the debt owed to the Bank. "Hold harmless" provisions apply to debts owed to a third party, not to a debt owed to the person that is being held harmless. Although the effective result of the exception clause is that there is no "hold harmless" provision in the Settlement Agreement applicable to the debt at issue,

6

11-03264-maw    Doc 19    FILED 02/28/13    ENTERED 02/28/13 16:30:56    Page 6 of 12

such a provision is simply not necessary.

Defendant also argues that the debt now owed to the Bank is a debt that was entered into after the termination of their marriage and, thus, was not incurred in the course of, or in connection with, the Separation Agreement. Initially, the court notes that neither the original debt owed to the Bank nor the debt for the "replacement loan" that the parties incurred as a result of being sued by the Bank were incurred in the course of, or in connection with, the Separation Agreement. *See Gibson*, 219 B.R. at 204 (noting that the liability of each party to defendant's stepfather was unaffected by the dissolution decree but that, as between the plaintiff and defendant, the dissolution decree had "significant new legal consequences"). However, the debt for which Plaintiff seeks a nondischargeability determination is the debt owed to her for obligations of Defendant under the Separation Agreement, as incorporated by the Dissolution Decree, that run in her favor, not the debt owed to the Bank. This debt clearly falls within the ambit of § 523(a)(15).

To the extent that Defendant argues that he no longer has any obligation to Plaintiff under the Dissolution Decree with respect to the debt owed to the Bank because a new loan agreement was entered into by the parties, the court disagrees. The new loan agreement replaced, or effectively refinanced, the original loan. It did nothing to alter Defendant's obligations under the Separation Agreement. *See Beale v. Kurtz (In re Beale)*, 381 B.R. 727, 732 (S.D. Ind. 2008) (rejecting the debtor's argument that a post-divorce agreement between the parties had altered the underlying nature of his obligation to his ex-wife and made § 523(a)(15) inapplicable where the agreement, "practically speaking, resulted in a refinancing of the old loan" and "[did] not express an intent to extinguish the Property Settlement Agreement" adopted by the decree of dissolution); *In re Braun*, No. BK08-80400, 2008 WL 2130313, *3, 2008 Bankr. LEXIS 1666, *8 (Bankr. D. Neb. May 15, 2008) (rejecting the debtor's argument that his obligations under a decree of legal separation were satisfied as a result of refinancing of original indebtedness). Defendant points to nothing in the record indicating that the parties' refinancing of their debts to the Bank was intended to satisfy or alter Defendant's separate obligation to Plaintiff with respect to the Bank debt.

There being no genuine dispute in this proceeding as to any material fact, for all of the foregoing reasons, the court finds that Plaintiff is entitled to judgment as a matter of law on her nondischargeability claim under § 523(a)(15) as set forth in the first cause of action in her complaint.

### III. Attorney's Fees

Plaintiff also seeks an order requiring Defendant to pay her attorney's fees incurred in prosecuting this adversary proceeding. Rule 7008(b) of the Federal Rules of Bankruptcy Procedure provides: "A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint,

7

answer, or reply as may be appropriate." Thus, attorney's fees must be sought in a bankruptcy adversary proceeding by a separate count of the complaint or other pleading and not merely in the prayer for relief. *E.g.*, *Leonard v. Onyx Acceptance Corp.*, Nos. 02-8125, Civ. 03-1117 ADM, 2003 U.S. Dist. LEXIS 6307, *5, 2003 WL 1873283, at *2 (D. Minn. Apr. 11, 2003); *Hartford Police F.C.U. v. DeMaio (In re DeMaio)*, 158 B.R. 890, 892-93 (Bankr. D. Conn. 1993); *Garcia v. Odom (In re Odom)*, 113 B.R. 623, 625 (Bankr. C.D. Cal. 1990); *see V.M. v. S.S. (In re S.S.)*, 271 B.R. 240, 244 (Bankr. D.N.J. 2002).

Plaintiff's complaint presents two causes of action. In addition to a demand in her prayer for relief, *see* Fed. R. Civ. P. 8(a)(3); Fed. R. Bankr. P. 7008, paragraph 21 in the second cause of action of her complaint asserts that Defendant should be ordered to pay reasonable attorney's fees that Plaintiff incurs in enforcement of any order of this court. [Doc. #1, p.4/6]. Under Federal Rule of Civil Procedure 8(a)(2), made applicable to this proceeding by Bankruptcy Rule 7008(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]." In turn, Federal Rule of Civil Procedure 10(b), as made applicable to this adversary proceeding by Bankruptcy Rule 7010, provides that a "party must state its claims...in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Plaintiff's reference to attorney's fees in paragraph 21 is both fleeting and mingled with other demands for relief. Nevertheless the court finds that Plaintiff's complaint properly asserts a claim for attorney's fees and complies with Bankruptcy Rule 7008(b) because it puts Defendant on notice of a claim in a paragraph apart from the prayer for relief and, pursuant to the incorporation by reference in paragraph 20, of the circumstances which she asserts require Defendant to pay her attorney's fees. *Morsey v. Semer (In re Semer)*, Case No. 11-3266, 2012 Bankr. LEXIS 5039, *8-*12, 2012 WL 5305748, *3-*5 (Bankr. N.D. Ohio Oct. 25, 2012).

Bankruptcy courts generally refuse to award attorney's fees to Plaintiffs in dischargeability litigation because there is no specific provision of the Bankruptcy Code authorizing such awards. *See Colbert v. Colbert (In re Colbert)*, 185 B.R. 247, 248 (Bankr. M.D. Tenn. 1995). Instead, in her motion for summary judgment, Plaintiff states that the basis for her claim for attorney's fees is a federal exception to the basic American Rule against fee shifting. *See Marx v. General Revenue Corp.,* 568 U.S. __, Case No. 11-1175, pp.10-11/16, majority op. (Feb. 26, 2013)("Under the bedrock American Rule, each litigant pays his own attorney's fees, win or lose..."; internal citations and quotations omitted); *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010). Absent a contractual, statutory, common law or rule- based provision authorizing an award of attorney's fees, the United States Supreme Court recognizes three narrowly defined circumstances in which fees may be shifted to an opposing party or counsel. *Chambers*

8

*v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Marx*, 568 U.S. __, Case No. 11-1175, pp.10/16, majority op. As originally explained in *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), the three categories of fee shifting are the common fund doctrine, "willful disobedience of a court order" and when a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (citations omitted); *Marx*, 568 U.S. __, Case No. 11-1175, pp.10/16, majority op. The source of authority for these exceptions is a court's equity power, as to the common fund exception, and a court's inherent discretionary power to control litigants before it, as to the other two exceptions. *Chambers,* 501 U.S. at 45-46. Plaintiff relies on the latter two exceptions for willful disobedience of a court order and bad faith, vexatious conduct in arguing that this court should award her attorney's fees in this adversary proceeding.[4]

Courts both inside and outside of bankruptcy matters apply exacting standards to justify an award of attorney's fees under the bad faith exception. A bankruptcy court must exercise its inherent power with restraint and discretion. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996)(citing *Chambers*). As the Sixth Circuit has noted, "the mere fact that an action is without merit does not amount to bad faith. . . . in order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods., Inc.,* 602 F.3d at 753 (emphasis original; internal quotation marks and citations omitted). The Sixth Circuit thus directs a three prong test in applying the *Chambers* standard to litigation conduct. *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). Its test requires a trial court to find that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit (or document) was an improper purpose such as harassment. *Id.* (citations and quotations omitted).

In her motion Plaintiff cites the following three undisputed facts in support of her claim for attorney's fees: Defendant agreed to and signed the Separation Agreement in December 1992; the Separation Agreement was incorporated into the state domestic relations court's Dissolution Decree in March 1993; Defendant soon defaulted on his obligations to the Bank in July 1993. Plaintiff argues that these facts show Defendant never intended to comply with the Separation Agreement and Dissolution Decree and that she had to hire an attorney to assert her rights in this case, therefore justifying an award of

---

[4]Plaintiff's motion asserts that the bad faith exception derives from a court's equity powers. But the Supreme Court ascribes the source of authority for awarding fees under the bad faith exception to the inherent authority to control litigants before the court, not to a court's general equity power. The difference is subtle, but important and speaks to the type of circumstances in which an award of attorney's fees would be appropriate.

9

attorney's fees. The court disagrees and finds that these facts, alone or together, fall far short of circumstances supporting an award of attorney's fees under the two cited exceptions to the American Rule.

To the extent Plaintiff is relying on the "willful disobedience of a court order" exception as the basis for imposition of attorney's fees by this court, the court initially notes that there is no order of this court that Defendant has disobeyed. *Selmer v. Nangle (In re Nangle)*, 281 B.R. 654, 659 (8th Cir. B.A.P. 2002)(in reversing bankruptcy court's award of attorney's fees, court notes that "there is no finding that he [defendant] disobeyed an order of the bankruptcy court."). The basis for the exceptions to the American Rule relied upon by Plaintiff as articulated by the Supreme Court is a court's authority to control litigants in proceedings before it akin to contempt. This is the point at which the authority underpinning the exception makes a difference: a court's power to do equity versus a court's inherent authority to control the proceedings and litigants before it. It is generally not up to this court to assess sanctions and fees for disobedience of orders of other courts under this court's inherent power to control the proceedings before it. *But cf. Buffalo GYN Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229 (Bankr. W.D.N.Y. 1991)(where prior order at issue was one of contempt of the other court that a included a pre-petition attorney's fees award, bankruptcy court suggests it can enhance the contempt court's award of attorney's fees to include those incurred when a debtor files for bankruptcy but "does not concede dischargeability.").[5]

Even if it is appropriate in this case for this court to award attorney's fees for "willful disobedience" of another's court's orders, the three undisputed facts presented do not evidence either individually or together "willful disobedience" of the state court Dissolution Decree or bad faith, vexatious conduct in this court. While Defendant indisputably defaulted under the Dissolution Decree some 20 years ago, that fact alone does not make either his bankruptcy filing or his defense of the adversary proceeding without merit. Nor has the "something more" been shown by Plaintiff. Indeed it appears from the claims filed in the Chapter 7 case that the Bank has received payments since the original default and refinancing of the Bank

---

[5]Plaintiff's complaint also requests entry of a separate money judgment against Defendant liquidating amounts owed under the divorce decree and an order from this court that he be required to pay the liquidated amount. The court is disinclined to do this. There is already a final state domestic relations court judgment in place between the parties.. *Compare Heckert v. Dotson (In re Heckert)*, 272 F.3d 253 (4th Cir. 2001)(bankruptcy court lacks jurisdiction to enter another judgment where there is already a prior state court judgment) *with Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 874-875 (9th Cir. 2005)(bankruptcy court has authority to enter a money judgment where there is already a state court judgment, but prudential concerns exist and authority should not be exercised absent unusual circumstances). *Cf. Longo v. McLaren (In Re McLaren)*, 3 F.3d 958, 966 (6th Cir. 1993)(holding that amount of debtor's liability was properly determined in dischargeability action where there was no prior state court judgment). Plaintiff has available post-judgment remedies in the state domestic relations court to enforce the Dissolution Decree. *See* Gibson, 219 B.R. at 204-05. To the extent § 523(a)(15) as in effect prior to BAPCPA made bankruptcy courts akin to super domestic relations courts, the BAPCPA amendments to § 523(a)(15) and 523(c)(1) have altered the jurisprudential landscape. *But cf.* 11 U.S.C. § 1328(a)(2). Plaintiff's motion does not argue this point and the evidence from which to make such a determination has not been presented in any event, so the issue will not be resolved in this procedural context.

10

debt.

And contrary to Plaintiff's argument in her motion, she was not "forced" to hire a lawyer to assert her rights in this bankruptcy case. The issue of whether the debt owed under the Dissolution Decree is nondischargeable under § 523(a)(15) is self executing and not one which is required to be brought in this court by the creditor to obtain a declaration of non-dischargeability. The only dischargeability exceptions that now require that a timely request for an affirmative determination of nondischargeability be commenced in bankruptcy court are those under § 523(a)(2), (4) or (6). 11 U.S.C. § 523(c)(1); *see* Fed. R. Bankr. P. 7001(6). When § 523(a)(15) was amended by BAPCPA in 2005, it was also removed from § 523(c)(1) as an exception requiring the bankruptcy court to make an affirmative determination of nondischargeability in order to be effective. State courts now have concurrent jurisdiction to make such determinations should they need to be made. *Lewis v. Lewis (In re Lewis),* 423 B.R. 742, 755 (Bankr. W.D Mich. 2010)("Under current law, state courts may decide nearly all divorce and domestic relations nondischargeability issues regardless whether the obligation is for 'support' or for a 'property settlement.'"). That Plaintiff chose to pitch a battle and to pitch it in this court and that Defendant contested the adversary proceeding does not amount to Defendant's bad faith, vexatious, or wanton conduct in this court or show "willful disobedience" of the Dissolution Decree.

Defendant has presented an argument with merit, albeit ultimately a losing one in this court's view. To the extent Plaintiff thought otherwise, she has not shown that she followed the procedures of Rule 9011 of the Federal Rules of Bankruptcy Procedure by asking Defendant to withdraw his answer to the complaint and withhold defense of this action. With just the three facts presented, virtually every individual who filed for bankruptcy while owing an unpaid domestic support or property settlement obligation could be construed to be acting in bad faith or vexatiously or in willful disobedience of a court order by simply filing a bankruptcy case or responding to an adversary proceeding that does not now need to be brought in this court.

Plaintiff's motion will therefore be denied with respect to the second cause of action in her complaint. The court will set a further pretrial scheduling conference at which it will be determined whether Plaintiff seeks to present additional facts in support of her attorney's fee claim. The court will also discuss the issue of further proceedings on liquidation of a separate money judgment in this court beyond the declaration of nondischargeability to which Plaintiff is entitled based on partial summary judgment when a final judgment is entered on the complaint.

**THEREFORE**, for the foregoing reasons, good cause appearing,

11

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 16] be, and hereby is, **GRANTED** as to her nondischargeability claim under 11 U.S.C. § 523(a)(15) in the first cause of action in her complaint and **DENIED** as to her request for an award of attorney's fees; and

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 14] be, and hereby is, **DENIED;** and

**IT IS FINALLY ORDERED** that this adversary proceeding is scheduled for further pretrial conference on **April 2, 2013, at 11:00 o'clock a.m.** Counsel may appear by telephone with 24 hours advance notice to the court.

###